UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANDREW W.,[1]
Plaintiff,

v.

MARTIN O'MALLEY,[2] Commissioner of Social Security,

Defendant.

Case No.: 2:23-cv-06488-ADS

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Andrew W. ("Plaintiff") challenges Defendant Martin O'Malley, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant.

Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff contends that the Administrative Law Judge ("ALJ") failed to properly consider the opinions of his treating psychiatrists, Bruce Steinberg, M.D., and Nima Fahimian, M.D. Having reviewed the Joint Submission, the administrative record, and the relevant legal authority, the Court finds that the ALJ erred by improperly rejecting the opinions of Dr. Steinberg and Dr. Fahimian. Because the Court cannot determine the impact the error had on the underlying unfavorable disability determination, the Court finds remand is necessary. Accordingly, the ALJ's decision is reversed, and the case is remanded for further proceedings consistent with the opinion below.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain facts relevant to this appeal. Plaintiff has past relevant work as an attorney and the ALJ categorized Plaintiff as having at least a high school education. (Administrative Record ("AR") 708–709.) At the hearing before the ALJ, Plaintiff testified that he has had multiple jobs after the onset of his disability that each ended after two or four months. (AR 703, 751.)

Plaintiff testified that he could not work due to his difficulty concentrating and following directions, and due to his tendency to get confused and flustered over details. (AR 703, 751.) He testified that he has had troubled relationships with his supervisors because his confusion and difficulty concentrating makes him unable to respond to emails and instant messages in a timely manner. (AR 703, 751–52.) Plaintiff testified that he can vacuum, mop the floors, clean the bathroom, and walk the dog. (AR 703, 753.) He further testified that he wrote a novel 20 years ago and spends five to ten hours a week on a blog that markets this novel. (AR 703, 753–54.) Plaintiff explained

that he struggles to have conversations and connect with others both in and outside the work environment. (AR 703, 754–55.)

Dr. Steinberg, a psychiatrist, began treating Plaintiff in February 2016. (AR 549, 552, 554, 556, 560, 564.) In December 2017, Dr. Steinberg completed a mental disorder questionnaire for Plaintiff based on a treatment history spanning February 10, 2016, through September 26, 2017. (AR 560–64.) Dr. Steinberg described Plaintiff as having a chronic history of bipolar disorder, mostly hypomanic over the past several decades, but that over the past several years Plaintiff has exhibited manic psychosis and occasional severe depression. (AR 560.) He described Plaintiff's concentration as markedly impaired over the past two years, and his thinking as delusional, paranoid, and grandiose in oscillation with self-depreciation. (AR 561, 563.) In the mental disorder questionnaire and in his progress notes between February and April 2017, Dr. Steinberg reported Plaintiff's symptoms included poor attention span and concentration, poor impulse control, hypomanic acceleration of depression and grandiose ideation, grandiose and overly self-referential and inclusive thoughts, and poor social judgment. (AR 552, 554, 556.) Dr. Steinberg concluded that Plaintiff was "not able to function in meaningful work-like situations because of impairment . . . for the past 2 years and in the foreseeable future." (AR 563.) The ALJ rejected Dr. Steinberg's opinion that Plaintiff is unable to work and that he has markedly impaired concentration as unpersuasive. (AR 706.)

Dr. Fahimian, also a psychiatrist, diagnosed Plaintiff with bipolar disorder and depression in 2018. (AR 647.) She treated Plaintiff's mental health condition from March 2018 through December 2018. (AR 638–54.) During this time, Dr. Fahimian noted improvements in Plaintiff's depression but also found he had difficulty connecting

and socializing with others, constricted and expansive affect, difficulty sleeping, and mild grandiosity. (AR 641–43, 646.) In September 2018, Dr. Fahimian completed a mental assessment of Plaintiff. (AR 633–37.) She found Plaintiff was markedly limited in his ability to complete a normal workday or week, to accept instructions, to get along with coworkers, and to respond to changes in the work setting. (AR 633–37.) The ALJ rejected Dr. Fahimian's opinion as unpersuasive. (AR 707.)

Between August 2021 and August 2022, Dr. Peter Weingold treated Plaintiff. (AR 899–902, 908.) In September 2022, Dr. Weingold completed a medical source statement providing an opinion on Plaintiff's ability to perform work-related activities and a mental disorders evaluation form. (AR 905–07, 908–11.) Dr. Weingold found Plaintiff had no limitations in his ability to understand and remember short, simple instructions and to carry out the same. (AR 905.) He noted Plaintiff's attitude and behavior was cooperative and pleasant, but that Plaintiff worried about his ability to hold a job and had problems with short term memory. (AR 909.) Dr. Weingold further noted that Plaintiff was depressed and had a decrease in focus and concentration, but had a normal appetite, sleep, and energy. (Id.) The ALJ found Dr. Weingold's opinion generally persuasive. (AR 707–08.)

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff filed his application for DIB and SSI on September 26, 2017, alleging a disability commencing on December 1, 2016. (AR 273, 696.) Plaintiff's applications were denied by initial determination on April 9, 2018, and the Commissioner denied reconsideration on June 18, 2018. (AR 108–11, 115–19; Dkt. No. 14 at 2.) Thereafter, Plaintiff requested a de novo hearing before an ALJ. (AR 121–22.) An oral hearing was

conducted on February 21, 2019, and a supplemental hearing occurred on May 19, 2020. (AR 33–77, 212–36.) On June 1, 2020, the ALJ published an unfavorable decision. (AR 12–26.) The Appeals Counsel denied the request for review on October 6, 2020. (AR 1–6.) Plaintiff appealed the ALJ's decision to this District Court, which remanded to the Social Security Administration on November 24, 2021. Weitz v. Kijakazi, No. CV 20-10968 SB (JEM), Dkt. 23 (C.D. Cal. Nov. 24, 2021); AR 761–62. On remand, an oral hearing was conducted on October 18, 2022. (AR 736–56.) Plaintiff, represented by counsel, appeared by telephone and testified at the hearing, as did a hearing monitor. (AR 736–56.)

On May 4, 2023, the ALJ found Plaintiff was "not disabled" within the meaning of the Social Security Act. (AR 693–710.) The ALJ's decision became the Commissioner's final decision on July 4, 2023, after 60 days passed following the publication of the ALJ's decision and the Appeals Council did not take up the ALJ's decision for review. (AR 694.)

Plaintiff filed this action in District Court on August 9, 2023. (Dkt. No. 1.) On October 10, 2023, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. (Dkt. No. 10.) Plaintiff filed an Opening Brief on November 28, 2023. (Dkt. No. 14.) Defendant filed a Response Brief on December 28, 2023. (Dkt. No. 21.) Plaintiff filed a Reply on January 4, 2024. (Dkt. No. 22.) The case is ready for decision.

**B. Summary of ALJ Decision After Hearing**

In the decision (AR 696–710), after initially determining that Plaintiff met the insured status requirements through September 30, 2023, the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled

under the Social Security Act.[3] See 20 C.F.R. §§ 404.1520(a), 416.920(a). At **step one**, the ALJ found that Plaintiff engaged in substantial gainful activity during 2021 and from June 2022 to May 4, 2023, the date of the ALJ's decision, but that there had been a continuous 12-month period during which he did not engage in substantial gainful activity, so the ALJ's remaining findings addressed that period. (AR 699.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder and neurocognitive disorder. (AR 699.) At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 700.)

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can only understand, remember, and carry out simple instructions. He can only have occasional interaction with supervisors, coworkers, and the public. He can only make simple, work-related decisions and only tolerate occasional change in work location. He is unable to work at a strict production rate, such as the rate required to work on an assembly line.

---

[3] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (as amended).

[4] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

(AR 702.)

At **step four**, the ALJ found Plaintiff was unable to perform his past relevant work. (AR 708.) At **step five**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 709.) The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the following representative occupations: merchandise marker (DOT 209.587-034); laundry worker II (DOT 361.685-018); and laboratory equipment cleaner (DOT 381.687-022). (AR 709.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 1, 2016, the alleged onset date, through the date of the ALJ's decision. (AR 710.)

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ failed to properly consider the opinion of Dr. Steinberg; and (2) whether the ALJ failed to properly consider the opinion of Dr. Fahimian. (Dkt. No. 14 at 4–5, 15.)

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it whether the Commissioner's decision is based upon substantial evidence. See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal

standards were applied. See Mayes v. Massanari, 276 F.3d 453, 458–59 (9th Cir. 2001) (as amended). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "'inconsequential to the ultimate nondisability determination,'" or if "'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012),

superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

**C. The ALJ Improperly Rejected Dr. Steinberg's Opinion**

Plaintiff contends the ALJ failed to properly consider the opinion of Dr. Steinberg with respect to the supportability and consistency factors. (Dkt. Nos. 1 at 4, 14 at 5–15.) First, Plaintiff argues the ALJ improperly rejected Dr. Steinberg's opinion as unsupported by selectively relying on a single statement by Dr. Steinberg that Plaintiff did not have impaired memory (an abnormality Dr. Steinberg never asserted Plaintiff had) while ignoring the pattern of well-documented mental abnormalities. (Dkt. No. 14 at 7–10.) Second, Plaintiff argues the ALJ never made a finding of how consistent or inconsistent Dr. Steinberg's opinion is with evidence from other medical sources and nonmedical sources. (Id. at 11–13.) Defendant responds to both points. According to Defendant, the ALJ did not err in its finding that Dr. Steinberg's opinion was unsupported because his "examination showed Plaintiff's memory and cognition to be grossly intact." (Dkt. No. 21 at 6.) Defendant argues further that the ALJ explicitly discussed the consistency factor by explaining how Dr. Steinberg's opinions were inconsistent with the medical records and Dr. Weingold's findings. (Id. at 7.) For the reasons set forth below, the Court finds the ALJ erred in evaluating Dr. Steinberg's opinion.

1. Legal Standard

For claims filed on or after March 27, 2017, such as Plaintiff's claim here, new regulations govern the evaluation of medical opinion evidence. See 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ no longer needs to provide "specific and legitimate" reasons to reject opinions from such sources. Woods v.

Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Rather, the ALJ determines which opinions are the most "persuasive" by focusing on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, and whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors. See 20 C.F.R. §§ 404.1520(c)(1)-(5), 416.920c(c)(1)-(5).

The most important factors to consider in determining the persuasiveness of medical opinion evidence are supportability and consistency. See Woods, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods, 32 F.4th at 792. The ALJ must explain how he or she "considered the supportability and consistency factors" in assessing a medical opinion. Id. at 792 (citing 20 C.F.R. §§ 404.1520c(b)(2)). Supportability is the "extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence'" and the medical source's supporting explanations. Id. at 791–92 (citing 20 C.F.R. §§ 404.1520c(a), 404.1520c(c)(1)). Consistency is the extent to which an opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792 (citing 20 C.F.R. §§ 404.1520c(c)(2)).

2. The ALJ's Decision

The ALJ found Dr. Steinberg's opinion "unpersuasive" because his "examination findings do not support his opinion." (AR 706 (referencing AR 560–64 (December 2017 mental disorder questionnaire form).) The ALJ explained that Dr. Steinberg's opinion that Plaintiff is unable to work and has markedly impaired concentration was not supported by his own examination findings because "in September of 2017 Dr. Steinberg

indicated that [Plaintiff's] memory was within normal limits, and that his symptoms had improved." (AR 706.) The ALJ also found Dr. Steinberg's "evidence is consistent with the [RFC] above" because on September 16, 2021, Plaintiff was stable on his medications and his memory and cognition were grossly intact; he reported losing a job but his mood was good and affect full in late 2021; his mood was stable and he was actively looking for work in early 2022; and he created and manages a blog and website. (AR 706 (referencing Dr. Weingold's psychiatric evaluation notes from September 2021 to March 2022).)

3. Analysis

The ALJ errd in evaluating Dr. Steinberg's December 2017 opinion. First, the ALJ erred in rejecting this opinion as unsupported because the ALJ did not consider all relevant evidence and relied only on portions of the record that bolstered his findings. See 42 U.S.C. § 423(d)(5)(B) (ALJ "shall consider all evidence available" in the record); Holohan v. Massanari, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ improperly rejected a physician's medical opinion by selectively relying on some entries in the claimant's records while ignoring other entries that indicated severe impairment); Garrison, 759 F.3d at 1017 (explaining that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

Here, the ALJ asserted that Dr. Steinberg's examination findings did not support his opinion that Plaintiff is unable to work and has markedly impaired concentration. (AR 706.) The ALJ provided just one example to explain why: Dr. Steinberg's September 2017 treatment notes state that Plaintiff's memory was within normal limits and symptoms had improved. (AR 706 (referencing AR 568).) But Dr. Steinberg did

not rely on Plaintiff's impaired memory as one of the symptoms impacting his ability to work. (AR 560–64.) And, between January and May 2017, Dr. Steinberg repeatedly described and documented Plaintiff's attention span and concentration as poor and described Plaintiff as having poor impulse control and social judgment, and circumstantial and tangential thoughts. (AR 545, 549, 552, 554, 556, 568.) Even Dr. Steinberg's September 2017 treatment notes reflect Plaintiff had abnormal and circumstantial thoughts as well as off point associations. (AR 561, 563, 568.) This evidence supports Dr. Steinberg's opinion that Plaintiff has marked impairments in his concentration and delusional thinking impacting his ability to work. The ALJ failed to consider this relevant evidence in determining supportability, relying only on select portions of the record to bolster his findings. Doing so was improper. See Holohan, 246 F.3d at 1207–08.

Second, the ALJ's erred in evaluating the consistency factor for Dr. Steinberg's opinion. Physician reports of later improvements in a plaintiff's condition are not sufficient to render an earlier physician's medical opinion inconsistent with the record. See Smith v. Kijakazi, 14 F.4th 1108, 1116 (9th Cir. 2021) ("Physician reports of 'improvement' are . . . not 'sufficient to undermine the repeated diagnosis of [the alleged mental health] conditions' in an earlier physician's report or render the earlier medical opinions 'inconsistent' and so not credible." (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200–01 (9th Cir. 2008))). The ALJ found that Dr. Steinberg's findings in his December 2017 opinion were inconsistent with Dr. Weingold's later findings in 2021 and 2022 that Plaintiff was stable on his medication. (AR 706.) This is not sufficient to establish that Dr. Steinberg's earlier medical opinion is inconsistent with the record, especially given that the ALJ purported to limit his findings to a specific 12-month

period but then based his consistency finding on Dr. Weingold's opinion from outside that period. (See AR 699 (ALJ explaining findings only addressed "the period(s) the claimant did not engage in substantial gainful activity").) The ALJ erred by failing to consider whether Dr. Steinberg's opinion was reliable evidence of Plaintiff's functioning in an earlier period and whether Plaintiff was disabled during an earlier period of time. See Smith, 14 F.4th at 1116 (holding ALJ erred in finding earlier physician's opinion inconsistent where it conflicted with a later doctor's findings because the ALJ failed to consider whether the "opinions were reliable evidence of [plaintiff's] functioning in [an] earlier period").

For the above reasons, the ALJ erred in evaluating Dr. Steinberg's opinion. If the ALJ had properly considered Dr. Steinberg's opinion, the ALJ may have reached different findings as to Plaintiff's RFC and the relevant steps in the sequential analysis. The ALJ's error in failing to properly consider Dr. Steinberg's opinion was not harmless. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (explaining an error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination").

**D. The ALJ Improperly Rejected Dr. Fahimian's Opinion**

Plaintiff next contends the ALJ failed to properly consider the opinion of Dr. Fahimian, who is also his treating physician. (Dkt. Nos. 1 at 4, 14 at 15–24.) Plaintiff argues the ALJ improperly rejected Dr. Fahimian's opinion as unsupported because he selectively relied on some entries in Plaintiff's records while ignoring others. (Dkt. No. 14 at 19.) Defendant responds that the ALJ properly found that the evidence in the record "is not consistent with marked limitations" and that the "overall evidence did not support Dr. Fahimian's opinion." (Dkt. No. 21 at 9.) Applying the same standards as

above, and for the reasons set forth below, the Court finds that the ALJ erred in evaluating Dr. Fahimian's opinion.

1. The ALJ's Decision

The ALJ found Dr. Fahimian's opinion "unpersuasive" because her "examination findings do not support her opinion" and "the evidence is not consistent with marked limitations." (AR 707.) The ALJ noted that Dr. Fahimian indicated that Plaintiff was feeling better, his medication was helping, he had intact cognition and fair insight and judgment, his mood had been stable, and his depression was gone. (AR 707.) The ALJ also found Dr. Fahimian's opinion was inconsistent with the record because Plaintiff had reported feeling "less depressed because he had a job and structure to his days." (AR 707.) Like in the ALJ's rejection of Dr. Steinberg's opinion, the ALJ also relied on Dr. Weingold's 2021 and 2022 findings that Plaintiff reported he was "doing well on his current medications", his "memory and cognition were grossly intact," and "his mood was stable." (AR 707.)

2. Analysis

The ALJ erred in evaluating Dr. Fahimian's opinion. First, the ALJ's consideration of the supportability factor was insufficient because the ALJ improperly relied only on isolated evidence that supported his conclusion while ignoring other relevant evidence in the record. See 42 U.S.C. § 423(d)(5)(B); Holohan v. Massanari, 246 F.3d 1207–08. Although Dr. Fahimian reported that Plaintiff's insight and judgment was fair in her treatment notes, she also reported that Plaintiff was having difficulty connecting and socializing with others and had persistent symptoms of bipolar disorder, namely euphoria and mild grandiosity. (Id. at 639, 642, 646.) In addition, although Plaintiff reported his depression was gone, Dr. Fahimian explained that

Plaintiff still showed symptoms of bipolar disorder, including being mildly hyper-talkative. (Id. at 641.) Further, the ALJ found that Plaintiff has a severe impairment of bipolar disorder, not depression, yet the ALJ did not explain why improvements in his depression would impact whether his bipolar disorder made him unable to work. (AR 699, 707.) It was improper for the ALJ to reference only evidence that supported his conclusion and to ignore this relevant evidence to the contrary without explanation.

Second, the ALJ erred in evaluating the consistency factor for Dr. Fahimian's opinion. The ALJ again relied on Dr. Weingold's 2021 and 2022 reports to find Dr. Fahimian's opinion inconsistent. (AR 707.) The ALJ erred by relying on Dr. Weingold's later reports of improvements to render Dr. Fahimian's earlier medical opinion inconsistent with the record. See Smith, 14 F.4th 1116. And the ALJ erred by failing to consider whether Dr. Fahimian's opinion was reliable evidence of Plaintiff's functioning in an earlier period, especially given the ALJ limited his findings to a specific time period but then based his consistency finding on Dr. Weingold's opinion from outside that period. See id. The ALJ also failed to explain why improvements in Plaintiff's depression are inconsistent with Dr. Fahimian's findings that Plaintiff is markedly limited in his ability to concentrate, work in coordination with others, accept instructions from supervisors, and get along with coworkers. (AR 634–636.)

For the above reasons, the ALJ erred in evaluating Dr. Fahimian's opinion as well. If the ALJ had properly considered Dr. Fahimian's opinion, the ALJ may have reached different findings as to Plaintiff's RFC and the relevant steps in the sequential analysis. The ALJ's error in failing to properly consider Dr. Fahimian's opinion was not harmless. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (explaining

an error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination").

**E. Remand for Further Administrative Proceedings**

The Court finds that the ALJ did not provide legally sufficient reasons, supported by substantial evidence, for finding Dr. Steinberg and Dr. Fahimian's opinions unpersuasive. Remand for further administrative proceedings consistent with this order, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See id. at 496.

## V. CONCLUSION

The decision of the Commissioner denying benefits is hereby reversed and the matter is remanded for further proceedings consistent with this Order. Judgment shall be entered accordingly.

DATE: August 22, 2024

/s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge